The case of the morning is Weltscheff v. Macoupin County Health Department. For the appellant, Mr. Dalton, and for the appellee, Ms. Anderson, you may proceed. May it please the Court, my name is Luke Dalton. I represent the appellant, Dr. William Weltscheff. First thing, let me apologize to you, Justices. The one that unfortunately has to tell you this, you're being let go. I'm replacing you with a Young and Hungry Justices. It's purely a financial decision, but... But long overdue. That's the reality of it. Thank you. If we were in front of a jury, which is the real question that we're faced with on this issue, I would argue that, in addition to all the comments, Young and Hungry obviously are age-related. Saying it's purely a financial decision is age-related because it denotes that the younger labor is cheaper. And then by calling the younger labor that she can fly denotes that Dr. Weltscheff is young and he's not going to fly, so he's old and he's slow. That is what we are arguing is the direct evidence that should get us to a jury on the age discrimination summary judgment issue. It's important to note in the underlying motion for summary judgment, the defendant initially argued in their first motion for summary judgment that we were unable to meet the McDonnell-Douglas test, which is an indirect evidence test. And I pointed out in my response, well, hold on, there's also another way to prove discrimination, that being direct evidence. And then their defendant's response in their reply on the motion for summary judgment basically was, well, those comments are stray remarks and those aren't the kind of comments that will get you to a jury. And I think those are exactly the comments that will get you to a jury on direct evidence. And that's what I'm asking this Court to find. I would also note the other evidence we have besides those comments are what I call the shifting reasons, the pretext, the multiple, multiple reasons they gave for Dr. Weltscheff's termination. I've laid those out on page 44 of my brief. There's numerous ones about how every time, including after the lawsuit filed, they added additional reasons and it changed, it was shifting, which goes to pretext. But the case law I cited says that not only applies in the McDonnell-Douglas test, but it's also independent evidence on its own to show discrimination. The fact that I can show, and I think very well, that their reasons were shifting and that was pretextual. So that's the basic argument on the motion for summary judgment relative to age discrimination. There are three other issues too as well before the Court, and I'll give you those three. We were initially awarded a default judgment. So one of the issues is that the Court denied the motion, or I'm sorry, granted the motion to vacate the default judgment. Then the Court went on to grant defendant's motion to dismiss relative to plaintiff's retaliatory discharge claim. And then finally, just like the age discrimination motion for summary judgment, the Court granted the defendant's summary judgment on the breach of contract. So I'm going to talk about those three as well. Let me ask you about this one point first. With regard to the trial court's decision to vacate the default judgment, which you are asserting to us was erroneous, which would be judged by the standard that it was an abuse of the discretion of the trial court. We're not renewing that de novo. The problem is this. We have all been trial judges, and I'm not sure cumulatively how many years, but I think it's probably 40, and we've been there. And the question with regard to the default judgment is this. You have a bystander's record that says no testimony or evidence was heard. But what it doesn't say is, were any questions asked of counsel by the trial court? Were any representations made to the trial court? Were there any remarks made by the trial court in granting the motion? These are important matters, which is beyond the question of whether any testimony or evidence was heard. And given the vast deference, because these, having been involved in these, these are matters where I say it's very deferential, because the trial court is in a much better position than this court from a cold record to assess what's really going on here. I don't think you provided us with the ammunition to make the determination that the trial court abused its discretion. For instance, it might very well be that there was some explanation or some discussion or some concerns expressed, or the trial court might have been musing about it when granted the motion that would make a difference to us, and we don't know any of that. What about this? And that's fair. I would certainly agree that this court has more experience than little of me relative to being a trial judge. I thought that day that there was a court reporter when we went on appeal. They said there wasn't a court reporter, so we did the bystander report, and it says along those lines that the parties argued inconsistent with their written motions, their written submissions. This isn't anywhere in the record, so I don't know if I'm allowed to say this, that Judge Lonergan was retiring, so that was part of the reason why we didn't go and get more of a... Were you the attorney president this hearing? I was. Well, I don't know, counsel, if some of these things were said and done, I'd expect them to be part of the bystander's record, and if there was some issue about it, I'd expect that to have been raised to the trial court. But at this point, I don't know how we're supposed to be able to second-guess the trial judge without hearing what the judge may have said or asked. The gist of the argument that day was, and what's included in the written submission by defendant, is that the defendant didn't forward a tender to their insurance counsel. That was my understanding and the sole reason, the excuse that the defendant gave, and that was discussed that day. And my whole issue with the vacating of the default judgment was, the defendant never refuted that I sent a courtesy copy to the defendant's attorney. So they're... But even if that were all true, the court still has the discretion to grant the motion. But we're here on a different standard now as far as abuse of discretion goes. I think it is abuse of discretion because their sole reason was... Well, let me be fair. I think there were two reasons. One is, we didn't quote tender it to our defense counsel. And then two, there was some sort of mistake we had also, we being the defendant, said there was an administrative charge. We filed an administrative charge for the age of discrimination with the Illinois Department of Human Rights. And they basically said we thought that was the same thing. So we didn't answer this... Answer this circuit court lawsuit. And so those are the two, to be fair, I think it's two excuses that they gave. But what those are refuted by is the fact that I mailed a copy to their attorney. So I think it's unfair and incorrect for them to say, well, we didn't... We did not tender it, quote tender it to our counsel. To be fair, they're talking about their insurance counsel, Ms. Anderson, who's here today and who is also defending the administrative charge. They said we didn't send it to the insurance counsel. When I say insurance, it's the counsel that their insurance company assigned them. Who I sent it to was Brent... I think it's Kane was his name. He's a local attorney in Carlinville who my understanding was is the county hires to handle civil matters. So he's a local guy in private practice. And he's referred to in the record as the ASA, which I think is the assistant state's attorney. He was the one who I sent it to. And he's the one who appeared at least three times. I cited him in my brief. He was there for the motion to vacate, the motion to dismiss, and the motion for summary judgment that we're hearing all today. So I do appreciate what you're saying about there being no transcript or no further bystanders report. What I come to see is that motions to vacate aren't supposed to be automatic. And as the supporting record, I'm sorry, the bystanders report does say is that the parties argued consistent with their written submissions. And so they had two excuses, both of which are refuted by the fact that they were sent to the private attorney, I'll call him. And it wasn't just sent to him. It was mailed and faxed to him. And I included those, including the fax cover page that shows okay that the fax was received by his office. They don't go anywhere, they being the defendant, in the underlying matter or in their really brief to explain away the excuses to why that private attorney didn't take any action. And I've cited the Jacob case, or I can't really, I don't know how to pronounce it, Jacobo, Jacoby, Jacobo case, that is exactly on point. It says that the defendants didn't explain in that case why their attorney's alleged lack of notice excused them from appearing. And that is true here as well where even given the fact that the record might be bare, the defendant received the summons, that's unrefuted. They didn't appear, that's unrefuted. Their private attorney received courtesy copies via two ways, via mail and via fax. That's unrefuted. And they have a, you know, a duty or I don't call it a duty, but the rules require them to appear in court. And yes, default judgment are drastic measures, but they're there for reasons because this isn't the Wild West. There's rules and they didn't show up. The other thing that they didn't do is when they filed their motion to vacate, they filed a bare bones, two page, unverified motion to vacate, no evidence, no testimony. And setting forth what I referred to earlier as their two excuses, which are both refuted by the fact that they aren't doing what the Jacobo case says, which is explain why their lack of notice excused them from appearing. And I'm probably mumbling a bit here, so I apologize. There's two things they didn't do. They didn't appear the first time and then they didn't meet any sort of burden when they filed their motion to vacate. It's unrefuted that the defendant or whoever is moving to have it vacated has the burden, proof on a motion to vacate. And again, all that they did was have an unverified two page motion. The question for a reviewing court is whether substantial justice is being done. And Havana National Bank case, which is a fourth district case, says there's four factors relative to determining if substantial justice is being done. One is whether the movement acted with due diligence. Two is the existence of a meritorious defense. Three is severity of the penalty as a result of the default. And four is the hardship on the non-movement, who's the plaintiff. And their two page motion, they don't cover those things. It's their burden of proof. They don't cut. And granted, they cite case law that you don't have to show a meritorious defense, but that's one of the four factors. They don't explain how they acted with due diligence, especially given the fact that I sent a copy to their private attorney. They don't talk about the severity of the penalty as a result. Counsel, you in your brief talk about how you claim plaintiff's liable cause of action for retaliatory discharge, and you acknowledge that the defendant made a motion under 2615, combined 2615 and 2619 to dismiss it. And the trial court seems to have dismissed on 2619. Then you add, out of completeness and caution, however, a plaintiff of the opposite incorporates herein his response in opposition to the defendant's motion to dismiss. When plaintiff argues he did state a cause of action for retaliatory discharge, but you don't brief it. Right. You know, we're a different court at a different level, and if you expect to be claiming that you stated a proper cause of action, you should be briefing in here, so we don't have to be going to the common law record to see what your argument may have been at the trial level. And I understand that, and they cited case law on that point. I don't think we get to the 2615 motion, which is why I didn't cover it. Why not? There were two motions to dismiss, the original complaint and the amended complaint. Both times, the judge says in the record, dismiss pursuant to 2619, 2-619. So the court didn't get to the 2615. I only said that in my brief just because, you know, attorneys, we try to cover our... Wasn't the matter under 2615 fully argued and presented to the trial court? It was definitely briefed. And aren't they raising it as an alternative grounds to affirm the dismissal here? That's my understanding based on their brief, yes. Aren't they entitled to do that? I don't know. Why shouldn't they be? In other words, we reviewed judgments, not reasons, if the issue was properly presented to the trial court, and the trial court decided to dismiss on 2619 grounds. Why wouldn't the 2615 be preserved for our consideration as well? Certainly. Again, the trial judge said twice it was 2619. 2615, there are several issues that in the underlying court, if the judge thought, for example, that we weren't stating the claim correctly, usually we would get leave to amend. So that's another reason why I thought it was clear that the trial judge did it for 2619. Admittedly, I don't cover the 2615 issues very much in my brief or reply, because, again, the judge just granted it pursuant to 2619. If I can find in my notes here. For example, they argue that we didn't allege that we engaged in a protected action, that's something I thought the trial judge would have given us leave to amend if he thought that was the case, so that we could try to get that right. So I guess what I would ask this court, if you reach the 2615, is you could then send it back to the lower court and give us a chance for leave to amend if we haven't alleged it correctly. One of the things the defendant raises in the brief on the 2615 argument is that we didn't clearly state a mandated public policy, and they cite an Olm versus Memorial Medical Center and Turner versus Memorial Medical Center. That was not an issue that they had argued in their underlying 2615 motion to dismiss, and that's one of the reasons why I didn't address it in my reply. The other reason why I thought that, and maybe here's a good time to correct this, in my brief I said that the defendant only argued under 2619 one thing, that it was failure to file at first as an administrative claim. That statement was wrong when I went back and looked at it. I think what I was reading in my head and what I thought it meant to say was that was the only issue, the failure to file as an administrative claim, that they raised in both 2619 motions, the original complaint and the amended complaint. So I thought that went further to the fact that that's why the judge granted the motion to dismiss both times was for failure to file as an administrative claim because that was the only issue the defendant raised both times. And when we were there the second time, we were explaining to the judge, hey, we're just repleting this under Weber versus Quito, I think it is, because we don't want to waive it. We understand you're probably going to get the same dismissal as you did the first time, which is fine, we're just trying to preserve our record. So our understanding was that it was dismissed for failure to file as an administrative claim. And we filed in our brief Blount versus Stroud, which is an Illinois 2009 case, which is exactly on point and explains why we were allowed to plead retaliatory discharge as a common law retaliatory discharge claim, whereas the defendant was dismissing it because they were claiming it was a statutory retaliatory related to the age discrimination. But as we explain in Blount versus Stroud explains, there's two different things. Our allegations weren't connected to the underlying age discrimination, they were separate, they were common law. And that's why they weren't required to be filed as an administrative claim. Okay, so I've covered age discrimination and the default to some degree and the 2615 motion to dismiss. The last one is the motion for summary judgment on the breach of contract. The defendant's, I think, basic argument was that the contract required 90 days notice and we sent them a letter that said here's your 90 day notice. But the problem was the letter said your last week is going to be next week or your last day is going to be next week. So it was essentially a nine days notice, not a 90 days notice. Our basic breach of contract case is contract says you're to work as a dentist, quote, part time as scheduled, end quote, and that there was a 90 day termination. So if you give 90 days notice, you still have to honor the contract. That's why there's 90 days. So you can't just say your last day is next week. And the other thing is, and we cited interrogatory answer C670 is where it is in the record, the defendant admitted in their interrogatory answer that they canceled the contract. So to me it's a really simple breach of contract. There's 90 days notice required, they had to honor the contract for 90 days, but instead they even admit they canceled the contract. That's a breach. Defendant argues at different times that Dr. Welchoff was an at will employee, but it was significant they admitted in a request to admit that he was not at will. And that's our position, he's not at will. He has a 90 day notice provision, so it's at will after 90 days. So the way I look at it is if you're an at will employee and they say, hey, your last day is next Tuesday, I'm going to say, well, that's unfortunate. Okay, thanks. I guess my last day is next Tuesday. But when you have a 90 day notice provision and they say your last day is next Tuesday, it's like, hold on, wait, I have a 90 day contract. I'm supposed to work for 90 more days. You just can't tell me not to come in next Tuesday. And I think it's also similar to the defendant. If he quit, the plaintiff would have him for 90 days. They'd say, okay, we're going to expect you to work the next 90 days. But yet when the plaintiff wants to let the defendant go, it's, oh, sorry, next Tuesday is your last day. We're not going to pay any attention to the 90 day clause. And we make alternative arguments. What if they had said your last schedule? The last day that we presently have scheduled is next Tuesday, and then they just didn't schedule it for the next 89 days or 90 days. And that's essentially, I think, what they're arguing. And that goes to the contract. The contract says you're going to work as a dentist, quote, part-time as scheduled. If the contract allowed you to just do that, where we're just going to schedule you next week and that's it, then what's the point of the 90 days? I don't know. But even with the contract, they could skip two or three weeks and then call him in as needed. They could skip a month and call him in as needed. But that's not what they did. They say in the interrogatory they canceled the contract. I understand. I asked you what would be the result if they simply stopped scheduling him after giving the 90 day notice. Then we would file suit for breach of contract because they're required to schedule him during that 90 day notice. Why are they required to schedule him? Because that's what the contract is for is to work part-time as scheduled. Well, what about who makes the determination of when he's needed? It's not his determination as to that. There must be an administrative authority that says, we want you to come in next Tuesday and Wednesday and the following week we don't think we need you. The week after that we have to wait and see. There's no guaranteed minimum number of hours. But I think it's more than zero. That's what part-time does. That goes to the alternate arguments that we make. First we ask that it be non-ambiguous that he's required to be scheduled. Otherwise it's unambiguous and that goes against the drafter and that good faith required them to schedule him. Otherwise, what's the point of saying you're going to work part-time and what's the point of a 90 day notice? That makes the contract meaningless. Thank you. Your time has expired. We'll hear from you on rebuttal. Thank you. Good morning, Your Honors. May it please the Court, Counsel, Dr. Wiltschaff, Karen Anderson, on behalf of Defendant Eppley from the Coopan County Health Department. I will just respond to Counsel's argument about letting you all off and being terminated. And I could just as easily bring the same message and say, I apologize but I have to let you go because the state is bankrupt and there's no funding. And if that were the case, and assuming you were over age 40, which is the protected category for age discrimination, there still would not be a violation of any anti-discrimination laws regarding age because the Seventh Circuit held that any decisions made based on financial reasons, even if it means terminating an older worker, are not indicative of age discrimination. By the Seventh Circuit, do you mean the Sangamon County Circuit Court here? No, I mean the Seventh Circuit. Oh, the federal agency. The federal, yes. Let's check it. It's the Anderson v. Baxter Health Care. And they said for age discrimination, termination of older workers based on financial reasons is not indicative of age discrimination. Well, if you told us that you were doing that because we were insufficiently young and hungry, why wouldn't that then become an issue for the trier of fact to decide what your motivation was? Well, if I had said that you were young and hungry, which is not the comment that was made, the comment that was made was the replacement was eager to work hard because she was a recent graduate. And the dental clinic, because it had been qualified for a federal clinic, was able to offer a loan forgiveness program for a new dentist. So the comment that was made, and, again, we admitted this for purposes of summary judgment, but it certainly, the comment would not have been admitted at trial or there would have been more. We have a genuine issue of material fact as to what was said and how it was said, do we not? We do. And for purposes of the summary judgment, which was what was filed, we admitted it saying if he said that for purposes of summary judgment, he explained that his thought process was that this was a person who had said she can work hard, she would work for a percentage of her profit, she was going to work for less money. The phrase young and hungry was used, wasn't it? I believe there were two separate phrases, and, yes, they were. Was that one of them? Yes. Why couldn't a jury decide that that was indicative of age discrimination? Because it was one comment and in the same transcript. That doesn't answer my question. Why couldn't a jury decide that differently than as you are arguing? Well, because I don't think it would have gotten to a jury. I think that for summary judgment purposes they were. Well, that's the issue before us. You convinced the trial court summary judgment should be granted. What I want to know is why doesn't that present a genuine issue of material fact as to why this wasn't a dismissal for age discrimination? Because the explanation that was given in that same phone conversation was that there were all these financial reasons. So the jury would have to accept the explanation given that was inconsistent with the plaintiff's claim that this was age discrimination. The jury wouldn't have to accept. But isn't that a requirement on a motion for summary judgment? But if you're asking me if the judge had not granted summary judgment, would there be an issue of material fact? Oh, in that case it goes to trial. Correct. Okay. And then the jury could hear this and they could make a decision. You short-circuited that process by arguing, Judge, this jury, no jury should be permitted to consider this because there's no genuine issue of material fact and we're entitled to summary judgment as a matter of law because no jury could conclude that this supports the plaintiff's claim that this was age discrimination. Because for purposes of summary judgment, we said we'll admit that we said this, so that eliminates the issue of fact. We're saying, yes, so it's not disputed any longer. We're saying for purposes of summary judgment, you know, Kent Tarrow is saying that, yes, he made the comment about the other dentist. But we have an explanation for it. The point that Justice Stein is making is a jury, 12 people could reasonably infer, conclude that it was very suspicious that somebody said young and hungry. And then they would decide whether the explanation was reasonable and sufficient to undercut the tenor of those earlier statements. I mean, that's why we're here. You're saying that your explanation was so good that the trial judge concluded, well, no reasonable jury could disbelieve this wonderful explanation you gave about fiscal constraints and working for less and they're willing to work harder or more. I mean, that's the question. Would 12 people believe you? I think 12 people would believe me. I know you do. Well, I think the judge agreed as well because based on the case law and the briefs, he ruled that summary judgment was granted. And so we're saying that that was a proper ruling because the evidence showed that it was not a statement that showed age bias or animus. And there were so many other facts in the case that the judge looked at when holding that summary judgment should be granted, like the fact that Dr. Welcheff replaced two younger dentists. I mean, this age discrimination, the analysis for age discrimination, he couldn't identify a similarly situated employee. Or he said he couldn't because the dental clinic was too small. But there were two dentists that he was hired to replace because they were let go for low productivity. One was in her late 20s or early 30s. One was in her early 40s. One of them was terminated actually for low productivity, and one was going to be terminated for low productivity, but so she quit instead. So there are two similarly situated employees right there that defeat his claim if you analyze it under an age discrimination claim. So I think there's other information, and also the ability to perform his job. He had more complaints than anyone else in the clinic ever had. On day one, he had complaints. On day one, two, and three, he had complaints not only from patients but from staff. Patients that said they wouldn't come back. Staff that said they don't want to be scheduled with him. So there were more than enough reasons to support his termination other than age discrimination. And I think that those reasons were put in the summary judgment motion, and that's what the judge ruled on. That there was overwhelming evidence that there were a whole series of explanations. Courts aren't supposed to be evaluating balancing evidence, counsel, in the summary judgment motion. The issue isn't who prevails. The question is, is there a genuine issue of material fact and inferences to draw on there from? But there were no issues of material fact given all the facts that were put into evidence. And so summary judgment was granted. Counsel then argued that the motion to vacate, that vacating the motion for default was improper. And I want to clarify, he stated that the standard at the appellate court had changed. It's not the substantial justice being done. It's not the standard for a motion to vacate. It is abusive discretion. That's the standard for a motion under 2-1301E, which is what we filed under. So clearly we feel that the judge properly granted the motion to vacate the default judgment. What's your explanation for this? As a court of review, I know our standard is that he abuses discretion. It seems awful. It seems like this is the kind of behavior which gives the law a bad name. And I don't know how the judge granted this under these circumstances. It seemed like the defense just blew this off. Well, it's unfortunate, but it appears that way. There is some misunderstanding. Brent Cain is not the attorney handling this case. Now, he appeared, but he did not file the briefs. He was a former assistant state's attorney who handles civil matters for the county. So when Plaintiff filed, he filed this charge of age discrimination with the county on April 29th on the same day. When our client, the health department, received the charge, that got forwarded to us. The process is that the charge should go either through their insurance broker because my firm is an insurance defense firm hired by the insurance company. It goes to a broker. The broker will send it to the adjuster, and the adjuster assigns it to one of the number of firms. McCoupin County, Illinois, not exactly the chancery division of Cook County in Chicago. Dr. Welch files a suit against the McCoupin County Health Department, and it's as if no one knows about this in the courthouse. And the McCoupin County Health Department doesn't hear about it. And gee, we didn't know anything about it. It somehow involved these lawyers and everybody else. Isn't that a stretch, counsel? Didn't everybody know about this case? Wasn't there discussion about it? Wasn't there gossip about it in the courthouse and among your client and all over McCoupin County? Well, I don't think that my client was confused. I don't think he realized there were two separate cases. I don't think that a director of a health clinic is necessarily supposed to know the difference between an administrative charge and a lawsuit. How about, gee, there's a suit. Who's our lawyer? Is it being responded to? It did go to Brent Kane, who was not their lawyer, unfortunately. So by the time it went to the broker. Wait a minute. If he appeared, if he entered an appearance. He didn't enter an appearance, Your Honor. Well, how did he go to court then? Because we filed. I received information. By the time I got it, it was November. It was over Thanksgiving. It was, I think, November 26th. When was it filed? When was the charge filed? Yes. The charge and the lawsuit were filed August 29th, the same day. I received the charge. So what happened over those three months? I think that they thought it was. Whose day? The health department. The people at the health department who received the charge. I can't speak to why Brent Kane didn't call. So for three months, they're sitting around. Hey, you handle it, Charlie. You know, what's. Well, they started the administrative charge, which we handled. And then by the time it went through the broker to the insurance agent to us, we handled it within two weeks. We filed a motion. Who was the lawyer who was involved? Who was. The Cook County Health Department gets sued. Who's the lawyer they contact and say, we're being sued. Handle this. Well, hopefully it's us now. No, what does this record show here? What did they do for three months? They sent us the charge and the lawsuit. When did they do that? When did they send us the charge? Yes. November? No, I believe the charge was early because we had already responded to the charge. Well, what's going on for this three months? I don't understand. This is, as I say, who doesn't know about this lawsuit in Macoupin County? Well, but they thought it was one and the same. That was the confusion is that. The Macoupin County Health Department, there's a CEO who I believe received one charge, and there was a CFO who I believe received the lawsuit. So you pick up your phone and you say, Charlie, you're our lawyer. Is this the same thing? What's going on here? And you got a response to this lawsuit because I don't like being sued. Is that what happened? No. No. No, that's not what happened. The charge got sent. The lawsuit did not. The lawsuit got sent to a broker who then sent it to the insurance adjuster who then contacted our firm to handle it since we were already handling the administrative charge. And there's this mysterious fellow who just is going to ask you about who's entering his appearance, and he's not your lawyer. How does that work? Brent Cain had been the former assistant state's attorney, and because we're outside of Chicago, at times we'll file briefs and we'll use local counsel to appear on behalf of us to save our clients money because we represent our firm as insurance defense counsel to municipalities, public entities throughout the state of Illinois. So we will handle the briefs. We'll write all the briefs and the motions, summary judgment and whatnot. But if it's a status hearing or something like that. Was Mr. Cain authorized by the defendants to appear? Mr. Cain was authorized. Once we gave him the motion, we sent the file to him and said, can you please appear on our behalf for this motion to vacate? Now, counsel stated that he had appeared at other times as well, which is correct. After we drafted the motion, we sent them to Mr. Cain's office. The summary judgment motion, I argued, Mr. Cain was present, but he did not approach the defense. The judge knew him and identified him, and he sat. Didn't the plaintiff send notice of the default to the defendant? I believe that's when we got the lawsuit was when they got notice of default, and they said, hey, what is this? We thought you were handling this charge. And we said, well, that's a lawsuit, which is separate from an administrative charge. So they sent the notice of default, and that's when we responded within 14 days. We had a motion on file regarding the motion to vacate the default judgment and explain that just there was a confusion. This wasn't any deliberate delay. As soon as we received it as insurance defense counsel, we responded to it. Well, that's what you did. Your clients seemed to sit on it and not care. I don't know that they didn't care, Your Honor. I think that they didn't understand the difference. And when they did send it to us, we reacted as quickly as possible. So what burden should be on clients like an agency like this to understand the difference or to call your lawyers and ask, is there a difference? Because, you know, they got defaulted because they didn't do anything. Isn't that what happened? And I think if they had, you know ---- They could have and should have done more and sooner, couldn't they? Absolutely. They could have and should have, but I don't think it was a deliberate delay, which is why ---- Is a deliberate delay an element of what's required before you can default someone? Or how about just negligent delay or just blowing it off? Well, the case that I cited said that even if negligent default judgments are routinely vacated and plaintiff has said, oh, well, now you're claiming that it was negligent. I'm not claiming it was negligent. I'm claiming it was a mistake and that it was good cause because of the confusion over the two different ---- You know, normally people don't file a charge in a lawsuit simultaneously. Normally there's a charge and when you get the right to sue letter, you file a lawsuit and incorporate that charge. These were filed simultaneously, so it did cause confusion. It even caused confusion before Judge Lonergan because we were closing discovery in one matter and then we had to reopen it once the administrative charge was finalized. So normally that's handled at the same time. But even in the case of negligence, default judgments are routinely vacated because of the substantial justice being done. So substantial justice is not served if we didn't even have a chance to explain ourselves or to argue the merits of the case. Is it good policy to routinely vacate default judgments, especially when it looks as here that the defendants were, what, lackadaisical, just not really responding? I think it's good practice to vacate motions for default when there is an explanation, when it's not. The cases that plaintiffs cited, especially the Jacobo case, where that is completely distinguishable because their insurance carrier was aware of it. Once the insurance carrier became aware of it, they contacted our office. And that was our point is that if the insurance carrier was aware of it, then yes. If we had the case and sat on it for three months, then no, it would not be good policy to just let us file a motion to vacate and have that motion granted. But clearly, there was enough information in what we filed that the judge said, okay, we'll proceed on the merits, and that's what we did. So we filed immediately and apologized, saying there was this confusion, and so now we want to proceed. So it's okay for the local governmental entity to be confused, but it wouldn't be okay for you to be confused and sit on it? For me as an attorney? For your firm. I mean, that's what you're saying. If we had known about it and we sat for 90 days, that would be a big problem. I'd say it would be a bigger problem. A bigger problem? Certainly, because we're attorneys. We're held to a higher standard in responding to something that's filed with the court. If I get a motion saying you need to hear a court. Units of local government are somehow just treated like some mope, some guy on the street that's never been to court before, doesn't have anything to do with administrative regulations, or never has even walked into the courthouse to pay a traffic ticket. The standard they're held to is they didn't know what they were doing because they got confused. I think the standard they're held to is that, is there a reasonable explanation and was there good cause? And we believe there was, as did the lower court, that the confusion over the two complaints simultaneously being filed caused confusion. And so there was the charge and the lawsuit. And I think that was the reason that the judge said, okay, let's see what you have to say. And we said as soon as we got it, as attorneys, I think we are held to a higher standard because we ought to know what the law is. I don't know that a director of a public health clinic necessarily needs to know the difference between an administrative charge and a lawsuit. He may well know now, but I don't think he should be held to the same standard as an attorney. That's why God invented lawyers to represent these people. You pick up your phone, counsel. For better or worse. And he did it, and he just sat there and figured, this looks like the same or I'm confused or whatever. No one pursued the matter. So we just have a situation where the civil litigation is stalled. We have the full judgment entered. We have months to go by with nothing happening. And your explanation to us is, well, as Justice Schenect points out, they're kind of stupid and slow, so don't hold them to too high a standard. Is that how it works? Those weren't my words. Really? Stupid and slow. That's my inference. That's not a fair one you're suggesting here? I'm suggesting that's not fair. I'm not saying that my client is stupid or slow. I'm just saying that they handled it. Perhaps they thought Brent Cain was handling it. Perhaps Brent Cain should have contacted us. Maybe he thought because we were handling the charge that we already had a copy of the complaint. So definitely, if we had received the complaint earlier, we would have acted on it earlier. But once the insurance carrier received it, they sent it to us, and we acted immediately. I'm more than uncomfortable with a Department of Public Health that's responsible for certain things throughout a county, a countywide service, I assume, that they don't understand that there are regulations and laws and other governmental entities that oversee them and lawsuits and grievances. That's part of doing business and providing the services they provide. And I think there could be more education, Your Honor, on which cases get sent to Insurance Defense Counsel and which cases get sent to a local state's attorney or a former state's attorney. I don't understand what former state's attorney. If he's a former state's attorney, then he's hired by your firm to do something in court. If he's an assistant state's attorney who has the job duty of representing the local or providing advice to the local governmental entities that work under the county, then those are two different things. Well, I think the reason that our client sent it to Mr. Cain was because he had been the state's attorney. Previous experience. And so that was just the past practice, and the state's attorney handled this. Now, when they enter this risk pool, the ICRP, the Illinois County Risk Management Trust, then certain issues regarding employment are handled by the trust, and that's when the case needs to get to an Insurance Defense Counsel. And I think that added to the confusion, in addition to having the charge and the lawsuit filed simultaneously, was that Mr. Cain was not part of the Insurance Defense Team until we asked him to appear on our behalf once we filed the motions. Thank you, Counsel. Your time has expired. Thank you. Rebuttal? Yes, please. One of the things I heard Counsel say was that attorneys are held to the higher standard in regards to this motion to vacate, and she also said Mr. Brent Cain was not their lawyer. Mr. Who? Mr. Cain. Oh, go ahead. That he was not part of the Insurance Defense until they asked him to appear. And again, as I pointed out earlier, there are three instances where he did appear for the County Health Department. On page C653 of the record, and also back on C645, the defendant admitted in the request to admit that it was a true and accurate copy of the letter from Mr. Cain, and it's dated August 22nd, which is before the suit was filed. Mr. Cain sent a letter to me, and we were negotiating over Dr. Welchuff being let go. He was the attorney, Mr. Cain, that I was negotiating with pre-suit. And why? Why were we negotiating? Why were you negotiating with him? I don't remember how it was instigated, if it was me or him, how I got his name, but they told me. You called him up. Yeah, Dr. Welchuff was let go, and he retained me, and we were negotiating with the county with Mr. Brent Cain about whether he was going to go back to work or not, whether they were allowed to do this or not. So at that point, your assumption is he's representing the county or the Department of Public Health. In fact, page C653, his letter of August 22nd, which is about a week or so before I filed suit, his first paragraph, as I indicated to you shortly after your July 23 letter to Mr. Taro of Macoupin County, I am the assistant state's attorney for Macoupin County, and I handle all of their civil matters. That's his letter in the record. And then my letter, I sent him a copy as page A15, and said we're again negotiating, and then I included a copy of the complaint and the administrative charge, and they were signed copies. So for them to say that he was not their attorney is, to me, not factually correct. And I agree with Ms. Anderson that attorneys are held to a higher standard and that he was aware of the suit, was negotiating with us. I sent him a copy. Did you ask Mr. Cain to testify? Did he make any representations with regard to the hearing of the motion to vacate the full judgment? He was the sole attorney there that day for Macoupin County, and he did not refute to my memory anything, and they have never refuted or acknowledged. Well, how about subpoenaing him and asking him to present some evidence or presenting evidence to the court on Cain's involvement? You heard the argument here, and he's just kind of this figure on the fringes, according to the defense. He was there that day. I thought that if he would have addressed it, and it's their burden of proof on the motion to vacate. They're the ones that have to show, and their only submission was the two pages. When you say he was there that day, what day was that? I'm sorry, the day of the motion to vacate. He was the sole attorney there for Macoupin County Health Department. He was the one that argued the motion to vacate. And I said, but I sent him a copy via fax and via regular mail. Real quickly, as to the age discrimination, I thought that telling Ms. Anderson tried to explain away all these age-related remarks, which just goes to show that it's a jury question. Maybe something I forgot to point out before. All these age-related remarks? I mean, you hang your hat on young and hungry, right? Young and hungry, and that she can fly, and that it's solely a financial reason, implying that the younger labor is cheaper, and saying she can fly is. The inference that younger labor is cheaper. By saying it's a financial decision. That's what I would argue to a jury. Mr. Taro even admits in his deposition that if a dentist was told they were being replaced by young and hungry, that that would denote an age-related reason. He admits that in his deposition. So that's another piece of evidence that I would give to the jury. If I could find it in my notes, I could give you the page, page C-521. In his deposition, he said someone might conclude age was a factor based on those remarks. And then the other key thing about his remarks, they were by a key decision maker. He was the CEO. He's the one that let Dr. Walsheff go. Made at the time of discharge, they were age and causally related. So that's additional evidence that goes that I would cite to a jury. So unless there are other questions, I am finished. There are none. Thank you. Thank you. I take the matter under advice. We'll wait for readiness of the next jury.